UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18 CR 98 SNLJ (ACL) |
| | ) |
| BARRETT C. SWAN, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Pending before the undersigned is Defendant Barrett Swan's Motion to Suppress Evidence (Doc. 35) and a Motion to Sever Counts (Doc. 46).  First, Swan requests the suppression of an incriminating statement he made while in custody at the Florissant Police Station.  Swan argues that he had not received the benefit of the *Miranda* warning prior to making the statement.  He further claims his statement was made during an attempted interview by the arresting officer.

The Government filed a Brief in Opposition to the Motion wherein it characterized Swan's statement as being spontaneous and not in response to interrogation.  (Doc. 39.)  Following an evidentiary hearing, both parties submitted memoranda.  (Docs. 54, 55.)

Swan's Motion to Sever requests that Counts I and II of the Indictment be severed for trial so that he will not "be deprived of an appreciable chance for an acquittal due to unfair prejudice."  (Doc. 46 at 2.)  The Government opposed this Motion, arguing that joinder was

Page **1** of **11**

proper "because the offenses are of the same or similar character," and "Swan will not be prejudiced by the joinder of offenses." (Doc. 47 at 5.)

In consideration of the pleadings identified above, as well as the single exhibit admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motions be denied.

## I.  Findings of Fact

Swan is charged with two counts of possessing a firearm[1] after having previously been convicted of a felony. The first unlawful possession is alleged to have occurred on May 26, 2018; the second on August 1, 2018. Swan has prior felony convictions for drug trafficking from 2004 and 2006. *Id.* Swan does not request the suppression of any evidence related to Count I.

On August 1, 2018, Florissant Police Department Officer Jonathan Kemp was on routine patrol. At approximately 3:20 a.m., he observed a red Ford Edge fail to stop at a stop sign. Officer Kemp initiated a traffic stop and the vehicle stopped. It was driven by a female; and there was a male passenger in the front passenger seat.

Officer Kemp requested identification from both of the occupants. The driver provided her driver's license. Officer Kemp confirmed that she had a valid license and no arrest warrants. The information provided by the passenger, however, did not match the man's appearance. The passenger provided the social security number and date of birth for a female. Officer Kemp approached the vehicle again to advise the passenger that the information he provided was inconsistent with his appearance. The passenger was given a

---

[1]  Both firearms were Smith and Wesson brand nine millimeter handguns. The model number and serial number for each were different; Count I involved a Model SD9VE while Count II involved a Model M&P 9 Shield.

Page **2** of **11**

second opportunity to provide his identification.  Officer Kemp explained that if the passenger did not provide valid identification, he would be taken to the police department to be fingerprinted.

The passenger provided his correct name and social security number.  When Officer Kemp ran that information on the computer in his patrol car, he learned that the passenger, Barrett Swan, had an active federal arrest warrant.  Officer Kemp returned to the red Ford Edge and asked Swan to exit the vehicle.  Swan was placed under arrest for the active warrant.  As soon as Swan exited the passenger seat, Officer Kemp observed a handgun lying in that seat.  The driver was immediately directed to exit the vehicle.  Swan was handcuffed and the handgun secured.  It was a nine millimeter Smith and Wesson with one live round in the chamber and seven additional rounds in the magazine.

Officer Kemp placed Swan in his patrol vehicle for transport to the police station.  Swan asked Officer Kemp if he could say goodbye to the driver.  Officer Kemp obliged the request.  While Swan was saying goodbye to the woman, he told her something to the effect of "I'm finished," or "I'm done."

Officer Kemp issued the driver three citations, including:  failure to stop at a stop sign, failure to register the vehicle, and failure to maintain insurance.  The driver was released from the scene.

Swan, on the other hand, was taken to the police station.  Swan was processed in the holdover room, which is where individuals in custody are booked and provided with a change of clothes.  During this process, Officer Kemp explained that when the booking process was complete, Swan "would be escorted to an Interview Room and given the opportunity to talk about the firearm."  (Doc. 53, Suppression Hearing Transcript, hereinafter

Tr., at 14.)  In response to that information, Officer Kemp recalled that Swan stated something like "'I'm not going to talk; we both know what you found in the car, and I'd rather be in the situation I'm in now than the situation that I was in in the past when I was shot and didn't have anything on me.'"  *Id*.  Swan had not been given the *Miranda* warning at that time.  Officer Kemp noted that when an interview of a suspect is anticipated, he typically advises the person "that upon completion of the booking process, that they'll be escorted to the Interview Room to speak further about the case involved."  (Tr. 20.)  In consideration of Swan's statement, Officer Kemp ceased talking to Swan.

Officer Kemp contacted the investigating officer, Task Force Officer (TFO) Brian Eggers, to advise Eggers that Swan had been arrested.  It was a short conversation as it was near 4:00 a.m.  TFO Eggers had some follow-up communication with Officer Kemp.  During one of the conversations, Officer Kemp relayed Swan's statement about why Swan possessed the firearm.  Nearly four weeks after the incident, TFO Eggers prepared his written report and memorialized what he recalled of Officer Kemp's recollection of Swan's statement, as follows:

> Prior to the interview, SWAN told Kemp "I'm not going to talk.  We both know what you found in the car.  I'd rather be in the situation I'm in now than be in the situation I was in in the past when I was shot without anything on me."

*See* Def.'s Ex. A, ¶ 3.  Officer Kemp's report did not include a summary of Swan's statement about possessing the firearm.  During cross-examination, he explained "At the time I didn't, I guess, fully understand the relevance that it would ultimately play." (Tr. 15.)  Officer Kemp

wrote his report at the conclusion of his shift on August 1, 2018.[2]  Although he was asked to provide a supplemental report concerning Swan's statements, Officer Kemp did not prepare a supplement; he understood TFO Eggers was including the information in his report.

Prior to leaving the scene, the driver claimed the firearm.  Officer Kemp advised the driver that if she had paperwork to confirm her ownership of the gun, she could bring it to the station and the paperwork would be attached to the report.  The driver never submitted any documentation related to the firearm.

## II.  Conclusions of Law

Swan requests suppression of his statement related to the possession of the firearm.  The Government has agreed that it will not offer Swan's statement, "I'm not going to talk," as that was an invocation of his right to not make a statement.  The Government argues that the remainder of the statement is admissible in that it was spontaneous and not in response to interrogation.  Swan does not challenge his statements while in custody at the site of the traffic stop.

Swan further requests that the two offenses charged in the Indictment-- felon in possession of a firearm on May 26, 2018 (Count I) and August 1, 2018 (Count II)--be severed for trial.  He alleges that "joinder of the offenses is unfairly prejudicial" and he "will be deprived of an appreciable chance for an acquittal due to unfair prejudice."  (Doc. 46 at 1-2.)

The undersigned will address each of Swan's requests in turn.

---

[2]  Officer Kemp's narrative portion of his report reflected that the date of the incident was August 8, 2018.  The General Information page, however, identified the correct date of the incident, August 1, 2018.  Officer Kemp could not recall why the incorrect date was listed in his narrative.  TFO Eggers' written report also included the incorrect date as Eggers used Kemp's narrative to assist him in writing his report.

**II.A.   Swan's statement is admissible at trial.**

Generally, statements to law enforcement officers are subject to those procedures set out in *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* instructs that law enforcement officers must inform a suspect of his or her rights prior to questioning. *Id.* at 444. The *Miranda* rights, however, are required only when the suspect is in custody and subjected to interrogation. *Id.* at 477-78. *See also United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). Custodial interrogation means questioning initiated by a law enforcement officer after a suspect has been taken into custody. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

Here, it is undisputed that Swan was in custody when he was being processed at the police station following his arrest on a federal warrant. "This case, therefore, turns on whether [Swan] was being interrogated when he made a statement without the benefit of the *Miranda* warning." *United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009) (citing *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005)).

Interrogation includes both direct questioning by officers and words or actions that officers should know are "'reasonably likely to elicit an incriminating response from the suspect.'" *Londondio*, 420 F.3d at 783 (citations omitted). The Eighth Circuit "ha[s] repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred. . .and is admissible with or without the giving of *Miranda* warnings." *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998) (citations omitted).

Swan argues that his statements were made during an attempted interview. (Doc. 54 at 5-6.) Officer Kemp, however, did not directly question Swan regarding the firearm. Swan's statement was made in response to Officer Kemp's explanation that following the booking process, Swan would be taken to an Interview Room where he would have an

opportunity to make a statement.  Swan's view that Officer Kemp attempted to interview him is based primarily on one sentence from TFO Eggers' written report (Def.'s Ex. A at ¶3) and Eggers' testimony (Tr. 38).  TFO Egger's report stated that "Kemp later attempted to conduct an interview of SWAN."  *See* Def.'s Ex. A at ¶3.

The record of this case does not support Eggers' characterization that Kemp attempted to interview Swan.[3]  TFO Eggers was not present during the booking procedure; his report reflects a second hand assessment of Kemp's oral summary of the circumstances under which Swan made the statement.  The undersigned finds Officer Kemp's testimony to be credible.  Officer Kemp routinely advised suspects of what would happen following the booking process.  Such explanation of procedure is not interrogation.  Additionally, Swan's response that he was "not going to talk," is consistent with Officer Kemp's testimony that he was simply advising Swan he'd have an opportunity to make a statement.  Swan's statement was made in the holdover area during processing and not the Interview Room.

With the conclusion that Swan was not being interrogated at the time he made the incriminating statement, an inquiry regarding whether Officer Kemp's words or actions were reasonably likely to elicit an incriminating response is required.  In light of the analysis above, Officer Kemp's explanation about there being an opportunity for Swan to participate in an interview after the booking process was completed was not designed to elicit an incriminating response.  *See Head*, 407 F.3d at 929 (officer could not have predicted that informing suspect that he wanted "to talk to [suspect] about what had occurred that morning" would elicit an incriminating statement).  The fact Officer Kemp's statement resulted in

---

[3]  Furthermore, TFO Eggers' report reflects Swan's statements were made "prior to the interview."  This is consistent with Officer Kemp's testimony that his statement that resulted in Swan's incriminating statement occurred during booking in the holdover area.

Swan making a spontaneous and incriminating statement could not have been predicted by Officer Kemp.

Swan's Motion to Suppress the incriminating statements he made while in custody at the police station should be denied.

**II.B.   Motion to Sever**

Swan asks that Count I be severed from a trial of Count II of the Indictment.  The first count encompasses conduct related to an alleged unlawful possession of a firearm by Swan on May 26, 2018, while Count II relates to the same conduct on August 1, 2018, with a different firearm.  Each charge is alleged to have been committed on different days; more than two months apart.  Swan alleges that separate trials are required under Fed.R.Crim.P. Rule 14 "if joinder of the offenses in an indictment appear to prejudice the defendant."  (Doc. 46 at 1.)  More particularly, Swan argues that trying the two counts in one trial will result in prejudice:

> because the jury will likely use evidence of one count to infer guilt [of] the other count by way of assuming Mr. Swan has a propensity to commit the charge[d] crimes.  The jury is likely to cumulate the evidence to find guilt on all crimes joined when it is possible that the jury might not find guilt if the crimes are considered separately.  Even if the jury is cautioned in a limited instruction, Mr. Swan is likely to suffer disadvantage because the jury is apt to disregard the presumption of innocence due at the outset of the trial for both counts because multiple, separate crimes are charged.

(Doc. 46 at 1-2.)

The Government asserts that joinder of the two counts is proper under Fed.R.Crim.P. Rule 8(a) because the offenses are of the same or similar character and joinder does not prejudice Swan because the evidence of each offense would be admissible under FRE 404(b).  (Doc. 47 at 5.)

Page **8** of **11**

Different offenses may be charged as separate counts in the same indictment pursuant to Federal Rule of Criminal Procedure 8(a), which states:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The two unlawful possession of a firearm charges are of the same or similar character. Both counts alleged Swan possessed a firearm at a time when he was a previously convicted felon. The only differences are the dates of the offenses and the firearms that were possessed. The prior conviction information for each offense is the same.

Courts permit joinder when "the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence of each overlaps." *United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999) (quoting *United States v. Shearer*, 606 F.2d 819, 820 (8th Cir. 1979). As argued by the Government, the Eighth Circuit has affirmed joinder of felon in possession offenses in prior cases that are similar to Swan's Indictment. *See United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011) (joinder appropriate where two felon in possession counts occurred 15 months apart, the offenses were predicated on the same felony, and "evidence of each offense would have been admissible under Rule 404(b) to prove the other in separate trials.").

Fed.R.Crim.P. Rule 14 provides "[i]f the joinder of offenses. . .in an indictment. . . appears to prejudice a defendant or the government, the court may order separate trials of counts,. . .or provide any other relief that justice requires."

"It is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S.

Page **9** of **11**

534, 539 (1993); s*ee also, Layton v. South Dakota*, 918 F.2d 739, 744 (8th Cir. 1990). Federal Rule of Evidence 404(b) permits the use of a crime, wrong, or other act to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." If the unlawful possession of a firearm charges were tried separately, the question of whether evidence of one unlawful possession would be permitted in a trial of the other would be determined by the trial judge. That being said,

> When *who* committed a crime is at issue, for example, Rule 404(b) says evidence of other crimes "may be admissible" to show identity. The most common form of evidence offered to prove identity is modus operandi evidence (*i.e*., evidence that shows a defendant's distinctive method of operation).

*United States v. Smith*, 103 F. 3d 600, 603 (7th Cir. 1996).

In consideration of the commonalities between the two counts in the instant Indictment, the record of the case supports the admissibility of the conduct underlying each in separate trials under 404(b). Thus, Swan has not and cannot meet his burden of showing that he would have an appreciably better chance of an acquittal in a separate trial of each count. *United States v. Midkiff*, 614 F.3d 431 (8th Cir. 2010) (denial of severance of fraud and tax charges upheld where evidence proving each charge would be also admissible in a separate trial of other similar charges). As a result, Fed.R.Crim.P. Rule 14 does not require the severance of Count I from Count II.

In the course of Swan's trial, should the facts developed in the Government's case fail to meet one of the Fed.R.Crim.P. Rule 8(a) requirements, Swan may renew his motion for severance based on the circumstances at that time. Accordingly, the undersigned recommends that the Motion for Severance of Counts be denied without prejudice.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence (Doc. 35) and Motion to Sever Counts (Doc. 46) be **denied**.

Further, the parties are advised that they have fourteen days, or not later than April 29, 2019, within which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

*Abbie Crites-Leoni*_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of April, 2019.